LOUIS J. AND NANCY S. GRASMICK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Grasmick v. Commissioner
Docket No. 25386-92
United States Tax Court
T.C. Memo 1994-425; 1994 Tax Ct. Memo LEXIS 433; 68 T.C.M. (CCH) 560; August 23, 1994, Filed *433 Decision will be entered for respondent. For petitioners: John G. Noppinger. For respondent: Clare J. Brooks. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined an addition to tax of $ 12,343 under section 6661 and increased interest under section 6621(c) for petitioners' 1985 Federal income tax. The addition to tax and the increased interest are attributable to an adjustment made to the income of Penndade Associates Limited Partnership (Penndade), which resulted in an automatic adjustment to petitioners' income pursuant to the provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Most of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. At the time the petition was filed, petitioners resided in Phoenix, Maryland. Although he never attended high school, Louis J. Grasmick (petitioner) is a self-made multimillionaire who *434 established a very successful lumber business and engaged in real estate development. In 1973, Warren Smith (Smith), a financial adviser, sold a limited partnership interest in Penndade to petitioner. Penndade owned and operated a shopping center in Dade County, Florida, in which a J.C. Penney store and auto service center were located. Prior to 1980, Penndade was on the accrual method of accounting. In 1980, Penndade filed Form 3115, Application for Change in Accounting Method, requesting a change from the accrual method to the cash receipts and disbursements method of accounting. This request was denied on January 3, 1983. In 1981, the general partners of Penndade recommended the sale of the shopping center to Hedon Investments (Hedon). Petitioner was sent a memorandum from a general partner outlining the terms of the sale and was sent a copy of an opinion of the tax aspects of the sale that was prepared by Hedon's legal counsel, Press & Goldenberg, P.A. The memorandum stated that the sale would involve an inverse wraparound purchase money note. The memorandum also noted: The structure of payments under this note varies from that of conventional mortgages and installment *435 indebtedness in that early installments received by Partnership are comprised largely of principal, with the proportion of each payment represented by interest income rather than by payment of principal gradually increasing with each successive installment. This structure is advantageous in that early payments received will be largely composed of tax-free return of principal or long-term capital gain (only 40% of which is taxable when recognized by individual taxpayers) rather than of interest, all of which would be taxable as unearned income. * * *
The memorandum also stated that the Press & Goldenberg tax opinion was intended for Hedon's use and should not be relied upon for the partnership and that each partner should seek his own tax counsel. The Press & Goldenberg opinion stated that the allocation between principal and interest would be respected by the Internal Revenue Service based on factual assumptions as represented by Hedon, including the assumption that Penndade, the seller, was on the cash method of accounting. Although petitioner did not personally investigate the proposed sale, he read the Press & Goldenberg opinion and discussed the transaction with Smith. *436 Petitioner also gave all of the Penndade information that he received to John G. Noppinger (Noppinger), the accountant who prepared petitioners' tax returns and petitioners' counsel in this case. Noppinger orally advised petitioner that the sale was in the best interests of the partnership and that the sale "was one of these things where the limited partners didn't have that much to say about it". Noppinger did not give petitioner any written analysis of the transaction. Petitioner did not ask Noppinger what reverse amortization meant or whether Penndade was on an accrual or cash basis method of accounting. J.C. Penney, the lessee of the shopping center, was required to approve the sale to Hedon or to exercise a right to purchase the property on the same terms and conditions. J.C. Penney exercised this right by causing the shopping center to be purchased by Treasury Properties, Inc. (Treasury), a related corporation. Under the terms of the sale, Treasury signed an inverse wraparound purchase money note that provided that the early installment payments would be comprised largely of principal, with the proportion of each payment constituting interest income gradually increasing *437 with each successive installment. Amortization of the inverse wraparound purchase money note in accordance with its terms resulted in lower interest income to Penndade in the early years and larger interest income in later years. Petitioners reported petitioner's 1985 share of Penndade income on a statement attached to Schedule E that listed the amount of income reported from various partnerships. Penndade's method of calculating interest, known as "reverse amortization", was challenged by respondent as not reporting interest income under the "economic method" and resulted in adjustments to Penndade's income to reflect interest income calculated under economic accrual principles. The adjustment that was made to Penndade's income resulted in an automatic adjustment to petitioners' income in 1985 pursuant to the TEFRA provisions relating to partnership administrative proceedings. On August 26, 1992, respondent sent a statutory notice of deficiency to petitioners that determined an addition to tax under section 6661 and stated that "The entire underpayment of your income tax for 1985 is a substantial underpayment attributable to tax motivated transactions under Sec. 6621(c) of the *438 Internal Revenue Code." Petitioners requested a waiver of the section 6661 addition to tax and the increased interest under section 6621(c). Respondent denied the waiver request. OPINION Section 6661
Section 6661(a) provides for an addition to tax in the amount of 25 percent of any underpayment attributable to a substantial understatement of income tax. Pallottini v. Commissioner, 90 T.C. 498, 503 (1988). An understatement is substantial if it exceeds the greater of 10 percent of the correct tax or $ 5,000. Sec. 6661(b)(1)(A). In general, if a taxpayer has substantial authority for the tax treatment of the item in question, or has adequately disclosed the tax treatment of the item on the return, the taxpayer may escape liability for the addition to tax with respect to that item. Sec. 6661(b)(2)(B)(i) and (ii). In the case of any item attributable to a tax shelter, the disclosure exception will not apply, and the substantial authority exception will apply only if there was substantial authority for the treatment of the item on the return and the taxpayer reasonably believed that the treatment of the item was more likely than not the proper *439 tax treatment. Sec. 6661(b)(2)(C)(i)(I) and (II). On brief, petitioners seem to contend that Gries v. Commissioner, a Memorandum Opinion of this Court dated May 26, 1950, which was cited in the Press & Goldenberg opinion, provides substantial authority for Penndade's calculation of interest income under the reverse amortization method. However, petitioners also concede on brief that the general partner and the Press & Goldenberg opinion were mistaken about certain underlying facts with respect to Penndade and about the law with respect to the reverse amortization method. Under these circumstances, petitioners have not presented substantial authority for the reporting of interest income under the reverse amortization method. See Antonides v. Commissioner, 893 F.2d 656, 660 (4th Cir. 1990), affg. 91 T.C. 686 (1988). Petitioners also argue that they adequately disclosed the relevant facts relating to the calculation of interest under the reverse amortization method. Citing Rev. Proc. 85-19, 1985-1 C.B. 520, petitioners contend that they are not required to attach a disclosure *440 form to their return, because the item in question here is attributable to a passthrough entity. This revenue procedure lists categories of controversies and forms that constitute sufficient disclosure to each controversy. It does not list Form 1065, Form K-1, or Schedule E of Form 1040 for the controversy at issue here; thus, petitioners' citation of this revenue procedure is misplaced. In any event, the partnership return is not in the record here. Petitioners further contend that, by including on their tax return the income from Penndade as reported to them by Penndade on Form K-1, they adequately disclosed the calculation of interest under the reverse amortization method. Adequate disclosure on the return can be accomplished by providing sufficient information on the return to enable respondent to identify the potential controversy. Schirmer v. Commissioner, 89 T.C. 277, 285-286 (1987). Here, petitioners merely listed the amount of income claimed from Penndade on a statement attached to Schedule E. Such information, without more, was insufficient to enable respondent to identify the potential controversy here, namely, whether Penndade properly *441 calculated interest income. As a result, this listing does not constitute adequate disclosure. We conclude that petitioners have not presented substantial authority or made adequate disclosure. Thus, we need not address respondent's contention that the special rules regarding substantial authority and disclosure for items attributable to a tax shelter apply. Petitioners also contend that respondent should have granted them a waiver of the section 6661 addition to tax, because petitioner acted in good faith and in a reasonable manner. Section 6661(c) authorizes respondent to waive any part of the addition to tax imposed under section 6661 on a showing that (1) there was reasonable cause for the understatement and (2) the taxpayer acted in good faith. The denial of a waiver under section 6661(c) is reviewable by the Court on an abuse-of-discretion basis. Mailman v. Commissioner, 91 T.C. 1079, 1083 (1988). The most important factor in determining reasonable cause and good faith under section 6661(c) is "the extent of the taxpayer's effort to assess [his] proper tax liability under the law." Id. at 1084; sec. 1.6661-6(b), *442 Income Tax Regs. Reliance on professional advice constitutes a showing of reasonable cause and good faith under section 6661(c) only if, "under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith." Sec. 1.6661-6(b), Income Tax Regs.
Petitioners contend that, at the time of the sale of the property, petitioner sought the advice of Smith and Noppinger and that reliance on their advice constitutes good faith and reasonable cause. Smith sold the limited partnership interest to petitioner, and the record does not indicate whether Smith was independent of Penndade or whether Smith had firsthand knowledge of the sale transaction at issue. The record also fails to establish whether Noppinger had firsthand knowledge of, or if he independently investigated, the sales transaction. Petitioner testified that he was told "by everyone" that the reverse amortization "was totally legitimate" and that he "would have no difficulty with it", yet, petitioner also admitted that he did not ask Noppinger to explain the reverse amortization method. Although the Press & Goldenberg opinion stated that its determination of the tax consequences was based on a factual *443 assumption that Penndade was on the cash basis of accounting, petitioner did not ask Noppinger whether Penndade was actually on the cash method of accounting. The application to change that method was pending at the time of the sale and was denied prior to the year in issue. On cross-examination, petitioner was asked to describe exactly what legal advice he sought from Noppinger; petitioner responded: I wanted to know if this was a sale that I had any real say in it and he told me I was a limited partner it was one of these things where the limited partners didn't have that much to say about it, that the thing was going through and I turned over the opinion letter and everything that subsequently came to me and he concurred that it was in the best interests of the partnership that it be sold.
Petitioners rely on Vorsheck v. Commissioner, 933 F.2d 757, 758-759 (9th Cir. 1991), affg. in part and revg. in part an Oral Opinion of this Court, and Heasley v. Commissioner, 902 F.2d 380, 384-385 (5th Cir. 1990), revg. T.C. Memo. 1988-408. Petitioner, a very successful businessman, is more *444 experienced and sophisticated in financial transactions than the taxpayers in those cases. Moreover, we are not satisfied that petitioner made an adequate attempt, either individually or through his advisers, to ascertain the tax consequences of the use of reverse amortization in the Penndade sale transaction. Petitioner's inquiry focused on whether the sale itself was beneficial, and he accepted the tax representations of Penndade. In any event, petitioners' assertion that petitioner's reliance constituted reasonable cause and good faith would serve only to bring them to the point where respondent "may waive all or any part of the addition to tax". Sec. 6661(c); emphasis added. Thus, petitioners must show that the reasonable cause and good faith are so clear that respondent's refusal is arbitrary, capricious, or without sound basis in fact. Mailman v. Commissioner, supra at 1084. Considering that the materials sent to petitioner by Penndade warned the partners to seek independent and informed advice and that the record does not clearly establish whether petitioner questioned his advisers or whether Smith and Noppinger provided independent *445 and informed advice with respect to the tax consequences of the reverse amortization method, we cannot say that respondent abused her discretion in denying a waiver. Section 6621(c)
Section 6621(c) provides for an increase in the interest rate to 120 percent of the statutory rate on underpayment of tax if a substantial understatement is due to a tax-motivated transaction. In White v. Commissioner, 95 T.C. 209 (1990), we held that the increased interest provided for in section 6621(c) was not part of a "deficiency" within the meaning of section 6211 for purposes of our jurisdiction over deficiencies. However, in Barton v. Commissioner, 97 T.C. 548 (1991), we distinguished White and held that, pursuant to our jurisdiction under section 6512(b)(1) to determine whether an "overpayment" has been made, we may determine whether section 6621(c) interest applies. Before trial, respondent filed a Motion to Dismiss for Lack of Jurisdiction as to Section 6621(c). After trial, respondent filed, and the Court granted, a Motion to Withdraw Respondent's Motion to Dismiss for Lack of Jurisdiction as to Section 6621(c), which *446 motion to withdraw claimed that petitioners had paid the section 6621(c) increased interest and that petitioners planned to make a claim for overpayment. Petitioners did not file an amended petition claiming an overpayment, and, ordinarily, we would not entertain an issue that has not been pleaded properly. However, when this case was called for trial, the parties were fully aware of the section 6621(c) issue, and neither party addressed the jurisdictional question on brief. In these circumstances, we conclude that petitioners are making a claim for overpayment and that the issue has been tried by consent of the parties within the meaning of Rule 41(b)(1). As a result, we must determine whether petitioners are liable for the section 6621(c) increased interest. Under section 6621(c)(2), a substantial underpayment attributable to a tax-motivated transaction is any "underpayment of taxes imposed by subtitle A for any taxable year which is attributable to 1 or more tax motivated transactions if the amount of the underpayment for such year so attributable exceeds $ 1,000." Here, petitioners concede that the underpayment constitutes a substantial underpayment, but they argue that such *447 understatement is not attributable to a tax-motivated transaction. Tax-motivated transactions, for purposes of the increased interest provision, include "any use of an accounting method specified in regulations prescribed by the Secretary as a use which may result in a substantial distortion of income for any period". Sec. 6621(c)(3)(A)(iv). Section 301.6621-2T, Temporary Proced. & Admin. Regs., 49 Fed. Reg. 50391 (Dec. 28, 1984), provides: A-3. A deduction or credit disallowed, or income included, in any of the circumstances listed below shall be treated as attributable to the use of an accounting method that may result in a substantial distortion of income and shall thus be a tax motivated transaction that results in a tax motivated underpayment: * * * (3) Any interest deduction disallowed for any period because the amount of the claimed deduction was computed using a method resulting in an amount of interest for a period that exceeds the true cost of the indebtedness for the period computed by applying the effective rate of interest on the loan to the unpaid balance of the loan for the period (i.e., the economic accrual of interest for *448 the period) * * * [Emphasis added.]
Respondent contends that Penndade's use of reverse amortization in reporting the interest income from the note falls within this description of an accounting method that is a tax-motivated transaction, because such method did not reflect the economic accrual of interest. Petitioners contend that the reporting of interest income under the reverse amortization method does not fall within the circumstance set forth in section 301.6621-2T A-3(3), Temporary Proced. & Admin. Regs., supra, because that circumstance involves disallowed interest deductions. Although the circumstance listed in section 301.6621-2T A-3(3), Temporary Proced. & Admin. Regs., supra, relates to an interest deduction, the preface in section 301.6621-2T A-3, Temporary Proced. & Admin. Regs., supra, refers to both deductions or credits disallowed and income included in any of the circumstances listed. The circumstance listed in section 301.6621-2T A-3(3), Temporary Proced. & Admin. Regs., supra, relates to the calculation of interest by a method that does not reflect the economic accrual of interest. Here, Penndade reported interest income from the note under *449 a method that distorted the true economic accrual of interest so as to result in lower interest income in the early years and larger interest income in later years. We agree with respondent that the use of the reverse amortization method to calculate interest income falls within the description of accounting methods that are tax-motivated transactions under section 301.6621-2T A-3(3), Temporary Proced. & Admin. Regs., supra. Petitioners argue that the reverse amortization method did not create a substantial distortion of income because, over the life of the note, all of the interest income would eventually be reported. However, section 6621(c)(3)(A)(iv) refers to a "substantial distortion of income for any period". Emphasis added. Moreover, accounting methods are intended to reflect correctly income earned during the annual accounting period. See Burnet v. Sanford & Brooks Co., 282 U.S. 359 (1931). Petitioners also argue that, because petitioner did not decide that the partnership should adopt the reverse amortization method of reporting interest income and merely accepted and reported petitioner's share as reported to petitioner by Penndade, *450 petitioners should not be subject to the section 6621(c) increased interest. Petitioners contend that the facts here are distinguishable from those in Prabel v. Commissioner, 91 T.C. 1101 (1988), affd. 882 F.2d 820 (3d Cir. 1989), where we held that a partnership's calculation of interest deductions by use of the "Rule-of-78's" was an accounting method that resulted in a substantial distortion of income under section 301.6621-2T A-3(3), Temporary Proced. & Admin. Regs., supra. Petitioners contend that, in Prabel, the taxpayer, himself, decided that the partnership should adopt the Rule-of-78's for calculating interest deductions and that the transaction at issue there was between related parties, without arm's-length negotiations. Although in Prabel the transaction at issue was between related parties and not the result of arm's-length negotiations, the facts found in the opinion do not indicate that the taxpayer, a limited partner, made the decision that the partnership should adopt the Rule-of-78's to compute interest deductions. They do indicate that, when the taxpayer acquired a 3.7485 percentage interest *451 in the partnership, the private placement memorandum soliciting investments disclosed the risks associated with the partnership's use of the Rule-of-78's method of accruing interest for tax purposes. In any event, regardless of whether petitioner was personally responsible for Penndade's use of the reverse amortization method, it is he, as a limited partner, who must bear the consequences of the use of such method. See Dixon v. United States, 73 AFTR 2d 94-345, 93-2 USTC par. 50,660 (S.D.Ind., Nov. 1, 1993). Finally, petitioners contend that section 6621(c)(3)(A) and (B) requires the notice of deficiency to identify specifically what type of tax-motivated transaction is applicable and that the notice of deficiency that was issued by respondent did not do so here. Petitioners' argument is without merit. Section 6621(c)(3)(A) and (B) defines what transactions are "tax motivated transactions" for purposes of the increased interest provision and contains no requirements with respect to the statutory notice of deficiency. Respondent, in the notice of deficiency that was sent to petitioners, made it clear that the entire underpayment *452 of tax for 1985 was a substantial underpayment of tax attributable to a tax-motivated transaction under section 6621(c) and, thus, provided adequate notice to petitioners. Accordingly, we hold that petitioners are liable for the increased interest under section 6621(c). Decision will be entered for respondent.